[No. 2208. Decided May 20, 1896.]

THE OREGON MORTGAGE COMPANY, *Appellant*, v. JOSEPH HERSNER *et al.*, *Respondents*.

HOMESTEAD — MORTGAGE BY HUSBAND UNDER POWER OF ATTORNEY FROM WIFE — CONSTITUTIONAL INHIBITION ON SALE.

A husband having a general power of attorney from his wife authorizing him to mortgage all their real estate can make a valid mortgage of their homestead, which is community property, without her joining in it.

Art. 19 of the constitution, providing that the legislature shall by law protect a certain portion of the homestead from forced sale, does not apply when the homestead has been voluntarily incumbered

Appeal from Superior Court, Spokane County.—
Hon. JAMES Z. MOORE, Judge. Reversed.

*A. M. S. Hilgard,* and *Jones, Belt & Quinn,* for appellant.

*Adolph Munter,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—The controlling question in this case
is whether a husband, under a general power of attorney from his wife, authorizing him to mortgage all
their real estate can make a valid mortgage of their
homestead,which is community property,without being
joined by the wife; and, as a corollary to that proposition, whether a *bona fide* purchaser, before maturity,
of a promissory note made by the husband and wife,
and of a mortgage given by the husband to secure the
same on community real estate, occupied by the makers of the note as a homestead, under authority of a
power of attorney from the wife, takes the same free
from any claims of the wife, either under the community property laws or the homestead exemption
laws. The trial court in this case held that the mortgage was void, which holding is alleged as error by
the appellant.

It was held by the supreme court of Texas, in *Patton v. King,* 26 Tex. 685, that a married woman could,
jointly with her husband, make a valid conveyance of
lands, her separate property, by an attorney in fact,
duly authorized, by power of attorney executed and
acknowledged in the manner prescribed by law for
the execution and acknowledgment of deeds of conveyance, and that the attorney was competent to make
the legal acknowledgment of his deed as such attorney for registration. Substantially the same proposi-

tion was held in *Warren v. Jones*, 69 Tex. 462 (6 S. W. 775), and *Jones ·v. Robbins*, 74 Tex. 615 (12 S. W. 824). It is claimed by the appellant that the case of *Patton v. King, supra*, is not exactly in point, for the reason that that case was an action in trespass; but the case itself shows that the action was brought for the express purpose of trying the title which had been obtained under the power of attorney. It is also claimed that the subsequent cases, mentioned above, which were Texas cases, laid down the same rule, for the reason only that they considered the case of *Patton v. King* as *stare decisis;* but from an investigation of those cases we are satisfied that they fully accord with the doctrine previously announced.

In opposition to this rule respondents cite *Gagliardo v. Dumont*, 54 Cal. 496, where it was held that, under the homestead act, the alienation of the homestead could only be by the personal act of the husband and wife, and a deed for that purpose could not be executed by attorney. This decision is based squarely upon the statute of California then in existence, which was to the effect that the wife could not convey even her separate property unless her husband joined in the conveyance, and the court bases the opinion squarely upon that statute, for it says:

"Under the restraints imposed by the homestead law, neither the husband nor the wife had power to transfer the homestead by a separate conveyance, nor could either incumber it to the prejudice of the other or of both, or to the destruction of the homestead itself. The obligation between them, in respect to its preservation, was reciprocal. Neither could, without the consent and concurrence of the other, alienate or transfer it.  .   .   .  As, therefore, a conveyance of the homestead by either spouse would be invalid, whether made directly or indirectly, voluntarily or by

forced sale, it would seem to follow that a power of attorney made by the husband to convey it would be also invalid; for, as the husband himself cannot dispose of it, he cannot empower another to do for him what the law forbids him to do.   Having no capacity to convey it independently of his wife, he cannot delegate to another a power which he himself does not possess.   Besides, the law is imperative that the alienation of the homestead must be by the personal act of the husband and wife."

This objection is not tenable, however, in this state, for our code (Gen. Stat., § 1446) especially provides that a husband may make and execute a letter of attorney to the wife, or the wife may make and execute a letter of attorney to the husband, authorizing the sale or other disposition of his or her community interest or estate in the community property, and as such attorney in fact to sign the name of such husband or wife to any deed, conveyance, mortgage, lease, or other incumbrance, or to any instrument necessary to be executed, by which the property conveyed shall be released from any claim as community property. This in addition to the provision that such power of attorney may be made by either husband or wife to a third party, to alienate either interest in community property or the separate property of either spouse. And the rest of the California cases cited simply sustain the doctrine announced by the court which grew out of the peculiar statutes of that state.   The case of *Wallace v. Insurance Co.*, 54 Kan. 442 (38 Pac. 489), is claimed to be a parallel case with the one at bar, by the respondents; and so it is, so far as the facts in the case are concerned.   But that case was decided, even by a divided court, on the express provisions of the constitution of Kansas, which requires the joint consent of husband and wife to any alienation of the

homestead; and the court held that the joint consent clearly implied the concurrent action and mental accord of husband and wife, and that the provision was not incorporated in the fundamental law for the benefit of either husband or wife alone, or for both of them together, but for the children as well, as a social unit. If such construction as this should be placed upon our statute, it would render meaningless the law empowering the wife to give a letter of attorney to her husband to alienate her estate, and we have no constitutional provision like that of Kansas. And so with all the other cases cited.

While expressions concerning the policy of the law have been made by the courts tending to sustain the theory contended for by the respondents, the decisions themselves have been based either upon special provisions of the statutes or constitutions of the states wherein the decisions were rendered, or there has been an absence of such enactments as our statutes furnish on the subject of conveyance. But, even if there were a conflict of authority, we should be inclined to hold that, where a wife had given a husband a general power of attorney to mortgage all the real estate of the community, such power would carry with it the authority to mortgage the homestead as well as other lands. Especially ought this to be true where no record notice is given of the intention to hold the property mortgaged as a homestead. In this instance the mortgage was given in 1890, and the declaration of intention was not filed until several years afterwards, and until after the commencement of this action. Certainly, if the wife has the power, which, under the statute, she must be conceded to have, to delegate the power to her husband to execute a mortgage, and the husband does execute it in accordance with the power

conferred, it would seem that, in good conscience, she ought to be estopped from denying the validity of her own deliberate act. Under all authority, the act of her attorney, within the scope of the authority conferred upon him, is her act. Especially should this rule obtain in this state where the wife's civil disabilities are removed by statute, the law providing that she shall have the same right and liberty to dispose of every species of property and to sue and be sued as if she were unmarried. All laws which imposed or recognized civil disabilities upon a wife which were not imposed upon the husband are abolished. The law especially provides that she may make contracts and incur liabilities, and that the same may be enforced by or against her in the same manner and to the same extent as if she were unmarried. With such a status, under the law, the decisions relied upon by the respondents could not have been logically rendered.

It is not contended that the power of attorney was not properly executed and acknowledged. That being taken for granted, it must be presumed that, if the wife had intended to relieve the homestead from the effects of the letter of attorney, it would have been so stipulated. The power given is a general power, and we see no reason, under the law or as a matter of right, particularly when the rights of innocent purchasers without notice are involved, why a homestead should be exempted from the operations of the power of attorney. It is contended by the respondents that such construction would be in violation of article 19 of the constitution, which provides that the legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families. But we think this proposition is hardly worthy of discussion. The fundamental law had no reference

to protection of homesteads under the exemption law, where the homestead had been voluntarily alienated or incumbered. With this view of the law, it is immaterial whether actual possession as a residence of the mortgaged property was a sufficient claim to the property as a homestead or not.

The judgment will be reversed, and the cause remanded, with instructions to enter judgment for the appellant in accordance with the prayer of the complaint.

HOYT, C. J., and GORDON, J., concur.